PEONY PARK, INC., APPELLEE, V. SECURITY INSURANCE COMPANY OF NEW HAVEN, APPELLANT.

289 N. W. 848

FILED FEBRUARY 2, 1940. No. 30728.

*Ramsey & Welpton,* for appellant.

*James E. Bednar, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

PAINE, J.

Suit was brought for loss on a fire insurance policy which covered the contents of a dance pavilion. This policy was written June 4, 1934, and the premium was $35 for one year from that date. The amount of the policy was $2,000. A jury was waived, and the court found the value of the property destroyed was $2,684.05, and entered a judgment for the full amount of the policy, $2,000, from which the insurance company appeals, and for reversal claims the judgment is contrary to law and is not sustained by the evidence.

The property destroyed was in an outdoor refreshment stand, located some 42 feet from the main dance pavilion, and connected therewith by a concrete sidewalk and small conduit. The amusement park, of which this was a part, was called the Royal Grove, erected at a cost of $28,000. The main dance pavilion was 168 feet by 124 feet, a story and a half high, with basement, and was surrounded by a hedge. This particular insurance policy covered the "contents" of the dance pavilion in a very broad form, the portions of the paragraph relating thereto involved in this case reading as follows:

"Contents form

"Peony Park, Incorporated

"*$2000.00* On the 'Contents' of the premises occupied by the assured in the *one story, composition roofed, brick, frame and steel* building and basement and additions and known as Nos. *7718½ Dodge Street,* * * * Omaha, Nebraska.

"The word 'Contents' used in this contract is hereby declared to include all property fixed or movable belonging to said Assured, * * * liability being hereby specifically assumed on tools, implements, awnings, signs, * * * all of said property being covered while contained in, on or attached to the building above described and on and under sidewalks, platforms, alleys, streets, yards, areaways and

in and on conveyances and railway cars on tracks and on premises while within 100 feet of said building."

Adolph Musil, a real estate and insurance agent, was the broker who placed all of the insurance for Peony Park, Inc., and was a stockholder therein. He testified that he was at this place at least twice every week; that he was there a couple of days before the fire; that a policy in the "National Liberty" for $2,000 expired June 4, and as Fell & Pinkerton discontinued representing that company they rewrote it in the defendant Security Insurance Company. Mr. Musil told them they wanted the "Contents Form," with the broad coverage. He said he received a commission from the company on this policy. Mr. Baldwin, through whom Mr. Musil placed the insurance in suit, knew about the refreshment stand being erected, for on May 25 he wrote a $500 policy on the building known as the refreshment stand. The fact that the owners took out a distinct and separate policy on the refreshment stand just as soon as it was completed indicates clearly that there was no thought on the part of the owners that this new building, separated from the main dance pavilion by a distance of 42 feet, was to be considered, or was covered, as an "addition" to the main dance pavilion.

An examination of exhibit No. 2, being the statement of the fire loss, made out June 8, shows clearly that there were no chairs nor tables which had been transferred from the main dance pavilion temporarily, and which would doubtless be insured, under the terms of the policy, while out in the premises, under trees, within 100 feet of the main pavilion, but the personal property listed in exhibit No. 2 consisted for the most part of an electric refrigerator, cooling tanks, beer dispensing equipment, soda fountain, and other apparatus for dispensing beer, and soda fountain equipment, the plumbing bill for installing the same amounting to $195, and that the beer-cooling boxes, dispensing cabinets, fountain cabinets, insulation, and installation, including cabinet work, cost $500. These items for labor and material indicate definitely that this personal

property was permanently installed as fixtures in the refreshment stand, which building was insured under a separate policy; that little of this equipment, except several small items, in value about $100, such as a coffee urn, a cash register, toaster, and grill, could be taken into the main dance pavilion and used there.

The defendant insurance company insists that, if there is no uncertainty as to the meaning of an insurance contract, and the same is legal and not against public policy, it will be enforced. It further argues that the contents of the large dance pavilion were covered while on sidewalks, in or on conveyances, and on the premises while within 100 feet of the building, but that this does not cover such personal property when it has become the contents of a separate frame refreshment stand, and cites in support thereof the case of *Franklin Fire Ins. Co. v. Hellerick & Son,* 20 Ky. Law Rep. 1703, 49 S. W. 1066, in which it was held that a policy which covered additions to a building would not cover another building separate therefrom and located 20 feet away.

The defendant insurance company has also cited the case of *Leavitt v. National Fire Ins. Co.,* 88 Misc. 563, 151 N. Y. Supp. 71, in which it was held that fire insurance policies which covered the varnish and sundries contained in the warehouse, additions, and extensions at a certain street location did not include material in adjacent buildings.

An insurance policy is simply a contract between the parties, and the usual rules of construction of contracts apply to policies. If the provisions of the policy are clear and unambiguous, the rule of strict construction against the company does not apply. On the other hand, for many years it has been held that insurance policies should be very liberally construed to effect the intention of the parties. It has been held that, where there are conflicting clauses, the one which affords the most protection to the insured will control.

Insurance policies are prepared by experts, who anticipate all possible complications arising in every contingency,

and it has been held by many courts that they will adopt that view which will sustain rather than forfeit the contract of insurance. It is consistent with both reason and justice that any fair doubt as to the meaning of the words of a policy should be resolved against the one who prepares it, for if the terms of a policy are capable of two meanings, that is, where the true meaning is doubtful, the law favors such construction as will protect the insured, and not avoid the policy. See *Bone v. Detroit Nat. Fire Ins. Co.*, 261 Pa. St. 554, 104 Atl. 742; *Tischendorf v. Lynn Mutual Fire Ins. Co.*, 190 Wis. 33, 208 N. W. 917, 45 A. L. R. 856; *Queen Ins. Co. v. Patterson Drug Co.*, 73 Fla. 665, 74 So. 807, L. R. A. 1917D, 1091; *Mutual Life Ins. Co. v. Hurni Packing Co.*, 263 U. S. 167, 44 S. Ct. 90, 31 A. L. R. 102; *New Masonic Temple Ass'n v. Globe Indemnity Co.*, 134 Neb. 731, 279 N. W. 475; *Schultz v. John Hancock Mutual Life Ins. Co.*, 134 Neb. 885, 280 N. W. 165; *Davis v. Aetna Life Ins. Co.*, 128 Neb. 154, 258 N. W. 58; *Omar Baking Co. v. Employers Liability Assurance Corporation*, 130 Neb. 365, 264 N. W. 873; *Marsh v. Concord Mutual Fire Ins. Co.*, 71 N. H. 253, 51 Atl. 898.

There is another established rule which applies to the case at bar, for while it is ordinarily held that insurance contracts are construed against insurance companies touching those provisions that are ambiguous, it has been held that this is not true as concerns the location of the property which is destroyed, and it is the general rule that "the policy will not be extended to property not in the terms of the description in this respect." See 26 C. J. 93; 6 Cooley, Insurance (2d ed.) 4921; 4 Couch, Cyclopedia of Insurance Law, sec. 963; *Jefferson County Bank v. Insurance Co.*, 251 Ky. 502, 65 S. W. (2d) 474.

In the case of *Meriwether v. Phenix Ins. Co.*, 137 Mo. App. 96, 119 S. W. 535, it was held that a $2,000 fire insurance policy on an electric motor and connections, all while contained in a quartz mill building, did not cover a motor of a different size located in a powerhouse some 1,250 feet away from the quartz mill, the only connection being

the electric wiring which transmitted power and light to the mill.

"A policy of fire insurance which is expressly limited to loss occasioned while the insured property is located in a definite * * * place does not impose liability such as will follow the property upon its being removed to and destroyed at another and different place." *Liverpool & London & Globe Ins. Co. v. Georgia Auto & Supply Co.*, 29 Ga. App. 334, 115 S. E. 138. See, *Druggists' Mutual Fire Ins. Co. of Iowa v. Shaw*, 170 Okla. 510, 41 Pac. (2d) 69.

The supreme court of Michigan held in the case of *Gersten v. Western Assurance Co.*, 265 Mich. 122, 251 N. W. 310, that, where the facts were undisputed, the question of whether a cottage was an outbuilding was one of law. A summer cottage had been constructed for use apart from the plaintiff's dwelling-house, and was located 50 yards therefrom, and furnished with household goods and personal effects taken in part from the main dwelling-house and placed in this summer cottage. Upon trial, the jury brought in a verdict that the cottage was an outbuilding within the coverage of the policy, but the Michigan court in reversing the judgment said that the household effects burned were not being stored in the cottage to relieve the dwelling-house, or as an aid to the use of it, but were placed therein for the purpose of using the cottage apart from the dwelling-house.

In like manner, in the case at bar the installation of the beer and soft drinks dispensing equipment in the refreshment booth was an entirely independent construction. Some of the equipment may have been taken out of the main dance pavilion, but when it was installed permanently in the newly-constructed refreshment booth it would in our opinion lose its connection with the main dance pavilion, and would no longer be covered as part of the "contents" of such pavilion. This is true because the word "contents" is a term which should have some definite, fixed relationship to the building in which it is to be used. When it is covered as being a part of that building, it must be fairly for use within it.

In our opinion, the district court was in error in entering judgment under the terms of the policy of insurance sued upon in this case. We believe there was no coverage under the policy, and the judgment is hereby reversed and the action dismissed.

REVERSED AND DISMISSED.