## CACHE v. CACHE.

*Divorce and alimony — Jurisdiction — Residence of plaintiff — Section 11980, General Code — Marriage and separation in another state — Right of plaintiff to select residence — Ohio divorce laws available, when — Service by publication — Effect of decree on status — Comity and full faith and credit.*

1. When a wife is justified in separating from her husband by reason of his aggression, she may lawfully select and acquire a residence separate from his.
2. If the wife removes into this state and acquires a *bona fide* residence herein for the length of time required by our Code, she is entitled to the benefit of our divorce laws, although during all of the time she lived with her husband he was a resident of another state and continued to reside therein.
3. Such a decree of divorce is binding within this state on both husband and wife, although the husband did not enter his appearance in the case and no service was had upon him other than by publication, as required by the Code in divorce proceedings.
4. Such a decree of divorce is not entitled to obligatory enforcement in other states under the full faith and credit clause of the Federal Constitution, but it may be given such degree of efficacy therein under the principle of comity as their own conception of duty and public policy may require.

(Decided May 28, 1919.)

ERROR: Court of Appeals for Mahoning county.

*Mr. I. G. Matthews* and *Mr. Ernest N. Pappas,* for plaintiff.

No counsel appeared of record for defendant.

POLLOCK, J. This is an action prosecuted to reverse the judgment of the court of common pleas of Mahoning county in a case in which the plaintiff, Theodosia Cache, failed to recover a judgment

of divorce from the defendant, M. C. Kolas Cache, on the ground of extreme cruelty.

The plaintiff, in her petition, alleged that she had been a resident of the state of Ohio for more than one year last past, and that she was a *bona fide* resident of Mahoning county. She also alleged wrongful acts of the defendant towards her sufficient to authorize a divorce on the ground of extreme cruelty.

Service was had on the defendant under the statute of this state authorizing a summons upon a nonresident by publication. No personal service was had on the defendant, and he did not appear in the action.

The court of common pleas found that the plaintiff had left her husband in the state of Missouri, coming into the state of Ohio, and into Mahoning county, more than a year prior to the filing of the petition, with the intention of making Mahoning county her permanent residence.

The court also found that the extreme cruelty of the husband towards the wife was sufficient to require that a divorce be granted her under the statute of this state, but found that the marriage was consummated in the state of Missouri, where the plaintiff and defendant resided from the time of the marriage until the separation, which was caused by the aggressions of the husband. After the separation the plaintiff came to Youngstown, the husband remaining in the state of Missouri.

The court refused to grant the divorce, on the ground that it did not have jurisdiction by reason of the marital residence of the wife being in the

state of Missouri.   These facts appear in the judg-
ment of the court.

The only question then submitted to this court
for determination is whether a woman who was
married in another state, and resided in that state
with her husband until her separation from him on
account of his wrongful acts committed in that
state, can, after residing in this state the time re-
quired by our Code, maintain an action for divorce
in this state, when the only service had upon the
husband is by publication.

Section 11980, General Code, reads as follows:

"Except in an action for alimony alone, the plain-
tiff must have been a resident of the state at least
one year before filing the petition.   Actions for
divorce or for alimony shall be brought in the
county of which the plaintiff is and has been for at
least thirty days immediately preceding the filing
of the petition, a bona fide resident or in the county
where the cause of action arose.   The court shall
hear and determine the case, whether the marriage
took place, or the cause of divorce occurred, within
or without the state."

Under the finding of the court, the plaintiff in
this action complied with all the conditions which
are required to entitle her to a divorce under the
statutes of this state.   The court below held that a
woman who was married and lived in another state
during all the time that she had cohabited with her
husband could not obtain a divorce in this state,
her husband retaining his residence in the other
state and not being personally served or appearing
in the case.

We are informed that the court based its decision on the principle announced by the supreme court of the United States, which will be referred to hereafter.

The first question that arises is whether a married woman, who up to the time of the separation has resided during all of her married life with her husband in another state, which is the residence of her husband, can acquire a residence in this state, the husband retaining his residence in the former state.

Under the finding of the court of common pleas of this county plaintiff had a right to separate from defendant by reason of his extreme cruelty towards her.

When a married woman is justified in separating from her husband, his marital control over her, which made his residence her residence, is broken, and she can lawfully acquire an actual residence separate from his. She then has a right to select any place for her residence that she may desire. If she comes into this state and lives here the required time, with the intention of making her home here, she becomes a resident of this state and can prosecute an action for divorce, notwithstanding her husband remains in the state of their marital residence. *Harding* v. *Allen,* 9 Greenleaf, 140, 23 Am. Dec., 549; *Gordon* v. *Yost,* 140 Fed. Rep., 79; *Shute* v. *Sargent,* 67 N. H., 305, 36 Atl. Rep., 282, and *Williamson* v. *Osenton,* 232 U. S., 619, 58 L. Ed., 758.

The supreme court of the United States, in *Cheever* v. *Wilson,* 9 Wall., 108 (19 L. Ed., 604), said at page 124:

"The rule is that she may acquire a separate domicile whenever it is necessary or proper that she should do so. The right springs from the necessity for its exercise, and endures as long as the necessity continues."

When plaintiff was compelled to separate from the defendant because of his wrongful acts towards her, she could establish a residence of her selection, and if she came into this state with that intention she would establish a residence here.

We are informed that the court below refused to grant plaintiff a divorce on the authority of *Haddock* v. *Haddock,* 201 U. S., 562 (50 L. Ed., 867).

In that case it appears that plaintiff and defendant were married in the state of New York, where the wife had previously resided and where she continued to reside; that immediately after the marriage the parties had separated; that the husband had, after the separation, gone into the state of Connecticut, and there, without personal service or her appearance, obtained a divorce from his wife upon service by publication alone.

The supreme court in that case held that the divorce granted the husband in the state of Connecticut was not entitled to the protection of the full faith and credit clause of the Federal Constitution, but that the wife had a right to prosecute her action for divorce against the husband in the state of New York, notwithstanding the prior divorce granted the husband in the state of Connecticut. The court did not hold that the divorce granted the husband in the state of Connecticut was not binding upon both parties in that state. On the other hand, it recognized the principle that

the courts of Connecticut had a right, under the laws of that state, to grant to the husband a divorce which would be binding on both parties within that state.

It is said by the court in the syllabus:

"Without questioning the power of the State of Connecticut to enforce the decree within its own borders, and without intimating any doubt that the State of New York might give it such degree of efficacy that it might be entitled to in view of the public policy of the State, that the Connecticut decree, rendered as it was without being based on personal service of the process on, and therefore without personal jurisdiction of the court over, the wife, was not entitled to obligatory enforcement in the State of New York by virtue of the full faith and credit clause of the Federal Constitution."

And further:

"As a corollary to the power of the State, irrespective of any extraterritorial effect, any other sovereign may, under the principles of comity, give to such a decree the efficacy which its own conception of duty and public policy may justify."

The court in the case above does not limit the right of a state by authorized judicial proceedings to determine the status of a citizen towards a nonresident which will bind within the state all the parties to the action, even if the nonresident defendant does not enter his appearance and no service has been had upon him except by publication. This principle was fully recognized in the case of *Pennoyer* v. *Neff*, 95 U. S., 714 (24 L. Ed., 565), where, in the opinion, Justice Fields, on page 734, said:

"To prevent any misapplication of the views expressed in this opinion, it is proper to observe that we do not mean to assert, by anything we have said, that a State may not authorize proceedings to determine the *status* of one of its citizens towards a non-resident, which would be binding within the State, though made without service of process or personal notice to the non-resident. The jurisdiction which every State possesses to determine the civil *status* and capacities of all its inhabitants involves authority to prescribe the conditions on which proceedings affecting them may be commenced and carried on within its territory."

This principle has been frequently recognized in divorce proceedings where the plaintiff has become a *bona fide* resident of the state, although the marriage contract was entered into, and the residence of the husband and wife, during all the time that they lived together, was in another state, and the residence of the defendant had not changed. *Tracy* v. *Tracy,* 62 N. J. Eq., 807, 48 Atl. Rep., 533; *Tolen* v. *Tolen,* 2 Blackford, 407, 21 Am. Dec., 742, and *Hubbell* v. *Hubbell,* 3 Wis., 662, 62 Am. Dec., 702.

The legislature of this state has provided, Section 11980, General Code, that the courts of this state "Shall hear and determine the case, whether the marriage took place, or the cause of divorce occurred, within or without the state."

A resident of the state whose cause is authorized by the provisions of the section just referred to has a right to insist that the courts of the state shall determine his legal rights by the laws of the state.

A divorce granted to a *bona fide* resident of this state is binding within the state on both the husband and wife although the marriage contract was entered into in another state, and the wrongful acts which authorized the divorce were also committed therein, even if the defendant is only served by publication under the statutes of this state.

It is true that such a judgment would not be entitled to obligatory enforcement in other states under the full faith and credit clause of the Federal Constitution, but it may be given such degree of efficacy under the principles of comity as their own conception of duty and public policy may require. *Howard* v. *Strode,* 242 Mo., 210, 146 S. W. Rep., 792; *Felt* v. *Felt,* 59 N. J. Eq., 606, 45 Atl. Rep., 105; *Buckley* v. *Buckley,* 50 Wash., 213, 96 Pac. Rep., 1079, and *Joyner* v. *Joyner,* 131 Ga., 217, 62 S. E. Rep., 182.

The plaintiff in this case, under the finding of the court entered in the judgment, was entitled to a divorce, and we think that the court should not have dismissed the petition, but should have granted her a divorce as prayed for.

The judgment of the court below is reversed, and cause remanded for further proceedings according to law.

*Judgment reversed, and cause remanded.*

METCALFE, P. J., and FARR, J., concur.